**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **GENERAL ELECTRIC CAPITAL CORPORATION,** a Delaware corporation | ) ) ) ) | |
| **Plaintiff,** | ) ) | **CASE NO.    2008-CV-2013** |
| **v.** | ) ) | |
| **SIOUX PRINTING, INC., a South Dakota Corporation, JON LEWIN, individually, and 2G2B, LLC** | ) ) ) ) | |
| **Defendants.** | ) | |

## AMENDED COMPLAINT

COMES NOW, GENERAL ELECTRIC CAPITAL CORPORATION ("GECC"), Plaintiff in the instant matter, by and through its attorneys, Coston & Rademacher, and complains against Defendants, SIOUX PRINTING, INC. ("SIOUX"), JON LEWIN ("LEWIN") individually and 2G2B, LLC ("2G2B") as follows:

## NATURE OF ACTION

1.     This action arises out of SIOUX's refusal and failure to perform its obligation as lessee under an equipment lease with GECC.

## JURISDICTION AND VENUE

2.     Plaintiff is a corporation organized under the laws of the State of Delaware, with its principal place of business located at 44 Old Ridgebury Rd., Danbury, CT 06810.

3.     Upon information and belief, Defendant SIOUX PRINTING, INC. is a corporation organized under the laws of the State of South Dakota, with its principal place of business at 500 East 52nd Street North, Sioux Falls, SD 57104.

4.      Upon information and belief, Defendant Jon Lewin is the President of SIOUX and the President and Member of 2G2B and can be served with process at 500 East 52nd Street North, Sioux Falls, SD 57104.

5.      Upon information and belief, Defendant 2G2B, LLC is a limited liability company organized under the laws of the State of South Dakota, with its principal place of business at 500 East 52nd Street North, Sioux Falls, SD 57104.

6.      Jurisdiction in this Court is proper under 28 U.S.C. §1332(a)(1) as the parties are citizens of different state and the total amount in controversy exceeds $75,000.00 exclusive of interest and costs that may be heard by this Court.

7.      Venue in this Court is proper pursuant to paragraph 22(j) of the Master Lease Schedule entered into by the parties on September 15, 1998.

**COUNT 1**
**BREACH OF CONTRACT**
**LEASE SCHEDULE #980916**

8.      On or about September 15, 1998, SIOUX entered into a Master Lease Agreement ("MLA") with GECC (see Exhibit A attached).[1]  The MLA contained two (2) separate schedules that each included different pieces of equipment.  Pursuant to Equipment Schedule No. 001 ("Schedule I"), GECC agreed to lease to SIOUX that certain equipment listed on Equipment Rider 001 and made a part of Schedule I, and SIOUX agreed to pay $2,404,490.00 over a term of ninety-six (96) months.  LEWIN and 2G2B subsequently signed an individual and corporate guaranty, respectively of SIOUX's debt to GECC.  A true and correct copy of Schedule I is attached hereto and incorporated herein as Exhibit B.

---

[1]  The MLA was originally entered into between non-party MAN Capital Corporation and Defendant. MAN Capital Corporation subsequently assigned its interests to MAN Portfolio Services Inc. and MAN Portfolio Services Inc. later assigned its interests to Plaintiff herein.

9.     Pursuant to paragraph 9 of the MLA, SIOUX agreed to always apprise GECC of the location of the Schedule I Equipment, and pursuant to paragraph 13 of the MLA, SIOUX agreed to keep the Schedule I Equipment "free from any and all liens and encumbrances." Pursuant to the terms of the MLA, SIOUX also agreed to pay the taxes on the Schedule I Equipment (MLA paragraph 14), and to insure the Schedule I Equipment (MLA paragraph 10).

10.     Upon default of the MLA, SIOUX agreed to pay: (a) a late charge (MLA paragraph 3); (b) any unpaid balance (MLA paragraph 18(b)(i)); (c) the accelerated balance of any and all amounts due under Schedule I (MLA paragraph 18(b)(ii)); and (d) attorneys' fees and costs incurred by GECC (MLA paragraph 18(c)).

11.     Upon default of the MLA, SIOUX also agreed to surrender possession of the Schedule I Equipment and to reimburse GECC for the costs related to such repossession (MLA paragraph 18(b)).

12.     GECC has performed its obligations pursuant to the terms of the MLA by, among other things, supplying the Schedule I Equipment to SIOUX. SIOUX acknowledged receipt of the Schedule I Equipment by a Certificate of Acceptance. (see Exhibit C attached).

13.     SIOUX breached the MLA by failing to make monthly installment payments on Schedule I beginning on or about January 15, 2008. Said failure constitutes a "default" pursuant to paragraph 17 of the MLA.

14.     As a result of the aforementioned default, as of April 3, 2008, GECC claimed as due and owing pursuant to Schedule I, $1,219,114.60, which is based on: (a) the past due unpaid balance of $40,000.00; plus (b) the accelerated balance of all amounts due under

Schedule I, discounted to present value, totaling $1,173,746.60; plus (c) late charges

totaling $3,000.00; and taxes of (d) $2,368.00.

15.    The foregoing sum was demanded from SIOUX, and SIOUX failed and refused

to pay said sum, which sum remains due and owing.

16.    As a result of the aforementioned default, GECC now also claims: (a) statutory

interest at a rate of 5% per annum on the aggregate principal amount of $40,000.00,

which interest amounts to $432.92 from January 15, 2008, through April 3, 2008, for

unreasonable and vexatious delay of payment pursuant to Illinois Compiled Statutes,

Chapter 815, §205/2; said interest continues to accrue at a rate of $5.48 per day; and (b)

attorneys' fees and costs incurred by GECC.

    **WHEREFORE,** Plaintiff, GENERAL ELECTRIC CAPITAL

CORPORATION, prays for judgment against Defendants, SIOUX PRINTING, INC.,

JON LEWIN, individually, and 2G2B, LLC, in at least the sum of $1,219,114.60, plus

costs, interest and attorneys' fees; and for such further legal and equitable relief as this

Honorable Court may deem just and appropriate.

### COUNT II
### BREACH OF CONTRACT
### LEASE SCHEDULE #990428

17.    Plaintiff repeats, realleges and incorporates herein by reference each of the

allegations contained in the foregoing paragraphs 1 through 14 of this Complaint,

inclusive, as if fully set forth herein.

18.    Pursuant to Equipment Schedule No. 002 ("Schedule II"), GECC agreed to lease

to SIOUX that certain equipment listed on Equipment Rider 002 and made a part of

Schedule II, and SIOUX agreed to pay $2,599,361.00 over a term of ninety-six (96)

months.   A true and correct copy of Schedule II is attached hereto and incorporated herein as Exhibit D.

19.      Pursuant to paragraph 9 of the MLA, SIOUX agreed to always apprise GECC of the location of the Schedule II Equipment, and pursuant to paragraph 13 of the MLA, SIOUX agreed to keep the Schedule II Equipment "free from any and all liens and encumbrances."   Pursuant to the terms of the MLA, SIOUX also agreed to pay the taxes on the Schedule II Equipment (MLA paragraph 14), and to insure the Schedule II Equipment (MLA paragraph 10).

20.      Upon default of the MLA, SIOUX agreed to pay: (a) a late charge (MLA paragraph 3); (b) any unpaid balance (MLA paragraph 18(b)(i)); (c) the accelerated balance of any and all amounts due under Schedule II (MLA paragraph 18(b)(ii)); and (d) attorneys' fees and costs incurred by GECC (MLA paragraph 18(c)).

21.      Upon default of the MLA, SIOUX also agreed to surrender possession of the Schedule II Equipment and to reimburse GECC for the costs, including refurbishment of the Schedule II Equipment, related to such repossession (MLA paragraph 18(b)).

22.      GECC has performed its obligations pursuant to the terms of the MLA by, among other things, supplying the Schedule II Equipment to SIOUX.   SIOUX acknowledged receipt of the Schedule II Equipment by a Certificate of Acceptance.  (see Exhibit E attached).

23.      SIOUX breached the MLA by failing to make monthly installment payments on Schedule II beginning on or about January 15, 2008.  Said failure constitutes a "default" pursuant to paragraph 17 of the MLA.

24.      As a result of the aforementioned default, as of April 3, 2008, GECC claimed as

due and owing pursuant to Schedule II $1,454,231.00, which is based on: (a) the unpaid balance of $60,000.00; plus (b) the accelerated balance of all amounts due under Schedule II, discounted to present value, totaling $1,387,679.00; (c) late charges totaling $3,000.00; and (d) taxes of $3,552.00.

25.     The foregoing sum was demanded from SIOUX, and SIOUX failed and refused to pay said sum, which sum remains due and owing.

26.     As a result of the aforementioned default, GECC now also claims: (a) statutory interest at a rate of 5% per annum on the aggregate principal amount of $60,000.00, which interest amounts to $649.38 from January 15, 2008, through April 3, 2008, for unreasonable and vexatious delay of payment pursuant to Illinois Compiled Statutes, Chapter 815, §205/2; said interest continues to accrue at a rate of $8.22 per day; and (b) attorneys' fees and costs incurred by GECC.

      **WHEREFORE,** Plaintiff, GENERAL ELECTRIC CAPITAL CORPORATION, prays for judgment against Defendants, SIOUX PRINTING, INC., JON LEWIN, individually, and 2G2B, LLC, in at least the sum of $1,454,231.00, plus costs, interest and attorneys' fees; and for such further legal and equitable relief as this Honorable Court may deem just and appropriate.

               Respectfully Submitted,

               GENERAL ELECTRIC CAPITAL CORPORATION


               By:  /s/ Patricia E. Rademacher
                    One of its Attorneys

Patricia E. Rademacher
Maysoun B. Iqal
Coston & Rademacher
105 W. Adams, Suite 1400
Chicago, IL 60603
Phone: 312-205-1010



Capital Corporation

## MASTER LEASE AGREEMENT

THIS MASTER LEASE AGREEMENT (this "Agreement"), dated as of **September 15, 1998**, by and between MAN Capital Corporation, a Delaware corporation with a place of business located at 17 State Street, New York, New York 10004 ("Lessor"), and **Sioux Printing, Inc.,** a South Dakota corporation with a place of business located at **500 East 52nd Street North, Sioux Falls, South Dakota 57104** ("Lessee").

**1. LEASE:** Lessor agrees to lease to Lessee, and Lessee agrees to lease from Lessor, the equipment (the "Equipment") designated in any equipment schedule now or hereafter executed and delivered by Lessee and approved and accepted by Lessor (a "Schedule"). The parties hereby expressly agree that each Schedule and any and all other documents and agreements delivered in connection therewith shall be deemed to constitute a separate agreement for the lease of Equipment (a "Lease") and, except as may be otherwise expressly provided therein, shall be deemed to incorporate by reference all of the terms and conditions set forth in this Agreement.

**2. TERM:** The term of each Lease shall commence on the date it is accepted by Lessor and shall continue until the satisfaction by Lessee, in the sole discretion of Lessor, of all obligations of Lessee thereunder. Each Rental Term shall commence upon the Acceptance Date. The term of this Agreement shall commence upon the execution hereof and shall terminate upon the expiration or earlier termination of all Leases.

**3. RENT:** Advance Rent shall be due and payable upon the execution by Lessee of each Schedule. All other Rent shall be due and payable without demand in the amounts and in the manner specified in the Schedule at the address of Lessor set forth above or as Lessor shall otherwise direct. In the event any payment of Rent or any other amount payable by Lessee to Lessor hereunder is received by Lessor more than ten (10) days after its due date (a "Delinquent Payment"), a late charge equal to five percent (5%) of the Delinquent Payment shall be due and payable by Lessee without demand as additional Rent for each month (or partial month) such Delinquent Payment is not received by Lessor.

**4. NET LEASE:** Each Lease shall be a net lease. Except as otherwise specifically provided herein or in any Schedule hereto, each Lease is irrevocable for the full term thereof and Lessee's obligation to pay all Rent and all other amounts due or to become due and its obligations to perform its other agreements thereunder are absolute and unconditional, shall not be subject to any abatement, reduction, set-off, counterclaim, recoupment, defense, deferment, or interruption for any reason whatsoever, and shall survive the expiration or termination hereof to the extent required for their complete performance.

**5. EQUIPMENT WARRANTIES:** Lessor shall assign to Lessee (to the extent assignable), as of the commencement of each Rental Term, any and all rights Lessor may have in or to any manufacturer's warranties relating to the Equipment and Lessee shall take all reasonable actions necessary, in its own name and at its sole expense, to enforce such warranties to the extent so assigned; provided, however, that, except as set forth in this Section 5, Lessor shall have no responsibility, obligation, or liability to Lessee for obtaining or enforcing any warranties relating to Equipment from the Supplier, for which Lessee shall be solely responsible.

**6. DISCLAIMER OF WARRANTIES: LESSOR, NOT BEING THE MANUFACTURER OF THE EQUIPMENT, NOR THE MANUFACTURER'S AGENT, IS NOT REQUIRED TO NOR MAKES ANY WARRANTY OR REPRESENTATION, EITHER EXPRESS OR IMPLIED, AS TO THE FITNESS, QUALITY, DESIGN, CONDITION, CAPACITY, SUITABILITY, MERCHANTABILITY, USE, OPERATION, OR PERFORMANCE, OR THE DELIVERY, SERVICING, MAINTENANCE, OR REPAIR, OF ANY EQUIPMENT, OR OF THE MATERIAL OR WORKMANSHIP THEREOF, IT BEING AGREED THAT ALL EQUIPMENT IS BEING LEASED "AS IS" AND THAT ALL SUCH RISKS, AS BETWEEN LESSOR AND LESSEE, ARE TO BE BORNE BY LESSEE AT ITS SOLE RISK AND EXPENSE. LESSEE ACCORDINGLY AGREES NOT TO ASSERT ANY CLAIM WHATSOEVER AGAINST LESSOR BASED THEREON.**

**EXHIBIT**

**A**

tables

Lessee's Initials:



Capital Corporation

**7. LESSEE REPRESENTATIONS AND WARRANTIES:** Lessee represents and warrants to Lessor that (i) if a registered person, it is duly organized, validly existing, and in good standing under the laws of its jurisdiction of organization and is duly qualified and in good standing in any other jurisdiction in which Equipment may be located, (ii) the execution, delivery, and performance of this Agreement and each Lease shall have been duly authorized by all necessary action and will not result in the creation of any lien upon the Equipment nor result in a breach, default, or violation of or under any of Lessee's organizational documents or any agreement, order, or law to which it or its property may be subject, (iii) this Agreement and each Lease shall constitute the legal, valid, and binding obligations of Lessee enforceable against Lessee in accordance with their respective terms, (iv) Lessee shall promptly provide Lessor with true and complete (certified if available) annual and interim financial statements as the same are prepared, (v) since the date of the most recently furnished financial statements, there shall not have been any material change in the financial condition of Lessee, (vi) Lessee shall not change its name or form of business enterprise without prior written notice to Lessor, and (vii) there shall be no pending or threatened proceedings involving Lessee that would affect its ability to perform its obligations under a Lease. The foregoing representations, warranties, and agreements of Lessee shall remain in full force and effect throughout the term of this Agreement.

**8. DELIVERY AND ACCEPTANCE:** Lessee acknowledges that it is solely responsible and has not relied on Lessor for the selection of the Equipment. Lessor shall have no obligation to deliver, install, erect, test, adjust, or service the Equipment. Equipment shall be deemed to have been finally accepted upon (the "Acceptance Date") the earliest of (i) receipt by Lessor of Lessee's certificate of acceptance, (ii) unless written notice otherwise is received by Lessor within such period, sixty (60) days after the date of initial delivery of the Equipment, (iii) the date on which the Supplier notifies Lessor and Lessee that such Equipment is, in the Supplier's reasonable commercial judgment, substantially ready for commercial operation, or (iv) when the Equipment is placed in commercial operation; provided, however, Lessee shall not place any Equipment in commercial operation until it has been accepted by Lessee.

**9. USE OF THE EQUIPMENT:** Lessee may use the Equipment only for lawful business purposes, shall use and maintain the Equipment with due care and in good condition, reasonable wear and tear excepted, in conformity with all manufacturer's specifications, and by competent and properly trained employees. Lessee shall pay all charges and expenses associated with the operation and maintenance of, all required spare parts for, and all alterations and additions to the Equipment. Lessee shall comply with all applicable laws, ordinances, and regulations and all conditions of all insurance required hereby which relate in any way to the Equipment and not, without Lessor's prior written consent, remove the Equipment from the Premises or attach or affix the Equipment to any personal or real property not leased from Lessor unless it can be removed therefrom without damage to the Equipment or to such other personal or real property.

**10. INSURANCE:** From the time risk of loss passes to Lessee, it shall, at its sole expense and until the Equipment is returned to and received by Lessor, specifically insure (with insurers acceptable to Lessor) all Equipment for an amount equal to the original acquisition cost thereof to Lessor against "all risks," including coverage against seismic and flood damage, designating Lessor (and its assignees) as loss payee, as its interest shall appear, and, without limiting the indemnification obligations of Lessee hereunder, shall obtain and maintain commercial general liability insurance, together with contractual liability coverage (specifically including the indemnification responsibilities of Lessee contained herein), providing for an annual aggregate coverage amount no less than that set forth in the most recently executed Schedule for claims resulting from personal injury, bodily injury, or property damage, designating Lessor (and its assignees) as an additional insured under any such policy. Lessee shall provide Lessor with insurance certificates evidencing all insurance required hereunder stipulating that such insurance shall not be cancelable by Lessee without thirty (30) days written notice to Lessor nor be amended in any material respect without the express prior written consent of Lessor. Lessor is hereby authorized, and Lessee hereby appoints Lessor as Lessee's attorney-in-fact, to (i) make, settle, and adjust any claims under all insurance policies, (ii) allow Lessor to agree with the insurers on the amounts to be paid in regard to any loss and as to whom and the manner in which such payments are to be made and structured, and (iii) receive all payments and



Capital Corporation

execute and endorse all checks issued by insurers as a consequence of any loss. Except with the express prior written consent of Lessor, Lessee shall not make any claims adjustment with insurers. In addition to the foregoing, Lessee shall procure and maintain, at its sole cost and at all times that the Equipment is in the possession of Lessee, workers' compensation insurance in the amounts and as otherwise required by law.

**11. DAMAGE TO OR LOSS OF EQUIPMENT:**   (a)   Except as expressly provided herein, the total or partial destruction of any Equipment, or the total or partial loss of use or possession thereof to Lessee, shall not release or relieve Lessee from the duty to pay Rent as it comes due.

(b)   In the event of any damage to the Equipment or any other loss, Lessee shall immediately give notice of such damage or loss to Lessor and to the insurers that have insured against such risks and Lessor shall have the option, exercised in its sole discretion, to either repair or replace the Equipment or declare the Lease to be terminated. Lessor may, but shall not be obligated to, undertake, by litigation or otherwise, the collection of any claim against any person for loss or damage of or to the Equipment.

(c)   If Lessor elects to terminate the Lease, the liability of Lessee to pay Rent shall be discharged by paying to Lessor the Rent then due thereon plus the applicable payment amount set forth in the Discount Annex to the Schedule (the "Destruction Payment"), which Destruction Payment shall incur interest, to the extent unpaid, at the lower of two percent (2%) per month or the highest legal contract rate permitted by applicable law, from the date of the termination of the Lease by Lessor until the date on which the Destruction Payment is paid in full (the "Destruction Interest"). Upon the actual receipt by Lessor of any recovery from insurance for any loss or damage, Lessor shall first apply said proceeds to satisfy any outstanding amount of Destruction Interest, then to satisfy any outstanding amount of the Destruction Payment, and, then, if there shall be any amount remaining, Lessor shall pay the same to Lessee; provided, however, that, in the event Lessee shall be in default under or be otherwise obligated to Lessor under any other lease or other agreement with Lessor, Lessor shall be entitled to apply all or any portion of any payment that would otherwise be made to Lessee hereunder to any other amounts due to Lessor by Lessee.

**12. INSPECTION:**  During the term of the Lease, Lessor shall have the right from time to time during reasonable business hours to enter upon the Premises or elsewhere for the purpose of confirming the existence, condition, and proper maintenance of the Equipment. Lessor shall be entitled, without notice to Lessee, to remove Equipment if, in the reasonable opinion of Lessor, it is being used improperly or beyond its capacity by Lessee. During any period of storage and/or the last one hundred eighty (180) days of a Rental Term, Lessor shall also have the right from time to time during reasonable business hours to enter upon the Premises or elsewhere to demonstrate and show the Equipment to others.

**13. ENCUMBRANCES AND IDENTIFICATION:**  Lessee will at all times protect and defend, at its own cost and expense, the rights of Lessor to the Equipment from and against all claims, liens, and legal processes and shall not take, nor permit to be taken, any action that would encumber or impair Lessor's rights. Lessee shall, upon the request of Lessor and at its own expense, firmly affix to the Equipment, in a conspicuous place, such decal, plate, or other forms of identification as shall be supplied by Lessor showing Lessor as lessor of the Equipment.

**14. TAXES:**  Lessor shall declare or register the Equipment to all appropriate taxing or other authorities and Lessee shall pay (either to Lessor as additional Rent or to such other authorities upon the direction of Lessor), when due, all taxes and other similar charges imposed or based upon the Equipment or the use, operation, leasing, or other disposition thereof, or the Rent or other amounts due under a Lease, and penalties and interest with respect thereto, including, but not limited to, sales, use, excise, value-added, and property taxes, but excluding, however, any taxes based solely on Lessor's net income. Lessor shall file all required tax returns and reports concerning the Equipment with all appropriate governmental agencies.

**15. TAX TREATMENT:**  Lessor assumes no liability and makes no representation as to the treatment by Lessee of any Lease or Rent for financial statement or tax purposes. Lessee is advised to consult its attorney, accountant, or tax advisor with respect thereto. If Purchase Option B is applicable to a Lease, Lessee shall take no action (nor



Capital Corporation

fail to take any action) that would impair Lessor's ability to take full advantage of those provisions of the Internal Revenue Code of 1986, as amended, relating to accelerated cost recovery deductions relating to the Equipment and Lessee shall indemnify Lessor for any loss suffered by Lessor caused by any such actions or failures to act.

**16. PERFORMANCE OF OBLIGATIONS OF LESSEE BY LESSOR:** In the event Lessee shall fail duly and promptly to perform any of its obligations under a Lease, Lessor may, at its option, perform the same for the account of Lessee, without thereby waiving such default, and any amount so paid or expense (including reasonable attorneys' fees), penalty, or other liability incurred by Lessor in such performance shall be due and payable by Lessee immediately without demand as additional Rent for the Equipment.

**17. DEFAULT:** A "Lessor Event of Default" shall occur if Lessor shall fail to lease the Equipment described in a Schedule delivered pursuant hereto, which responsibility and obligation is Lessor's sole responsibility and obligation to Lessee hereunder. A "Lessee Event of Default" shall occur if (i) Lessor fails to receive when due any installment of Rent, (ii) Lessee shall fail to perform or observe any representation, warranty, covenant, condition, or agreement to be performed or observed by it hereunder and such failure continues uncured for ten (10) days after written notice thereof to Lessee by Lessor, (iii) Lessee attempts to remove, sell, transfer, encumber, part with possession, or sublet the Equipment or any part thereof, (iv) Lessee shall default under or fail to perform or observe any covenant, condition, or agreement to be performed or observed by it under any other lease, financing, or other agreement with Lessor or under any lease, financing, or other agreement with any third party and such failure continues uncured for any applicable cure period, (v) Lessee or any guarantor ceases or takes any action looking to cease doing business as a going concern, becomes bankrupt or insolvent, makes an assignment for the benefit of creditors, or admits its inability to pay its debts as they become due, (vi) Lessee or any guarantor takes any other action pursuant to or files (or has filed against it) a petition under Title 11 of the United States Code (or any successor or similar law), or (vii) Lessee or any guarantor suffers a material adverse change in its financial condition or operations.

**18. REMEDIES:** (a) Upon the occurrence of a Lessor Event of Default, Lessee, at its option, may (i) cancel the Lease and recover so much of the Rent previously paid by it or (ii) commence an action for specific performance against Lessor. **NOTWITHSTANDING ANYTHING CONTAINED HEREIN OR IN A LEASE TO THE CONTRARY, IN NO EVENT SHALL LESSEE, REGARDLESS OF CAUSE, ASSERT ANY CLAIM WHATSOEVER AGAINST LESSOR FOR LOSS OF ANTICIPATORY PROFITS OR CONSEQUENTIAL DAMAGES, THIS SUBSECTION (a) CONSTITUTING THE EXCLUSIVE REMEDIES OF LESSEE AND LESSOR'S SOLE RESPONSIBILITY AND LIABILITY TO LESSEE HEREUNDER. LESSEE HEREBY WAIVES THE RIGHT AND FURTHER AGREES NOT TO ASSERT AGAINST ANY ASSIGNEE OF LESSOR'S RIGHT TO RECEIVE PAYMENT OF RENT HEREUNDER ANY CLAIM OR DEFENSE WHICH LESSEE MAY ASSERT AGAINST LESSOR.**

(b) Upon the occurrence of a Lessee Event of Default, Lessor, at its option, may (i) collect all accrued and unpaid Rent, (ii) terminate the Lease and declare all unpaid Rent and other sums due and to become due hereunder immediately due and payable, (iii) proceed by appropriate court action or other proceeding to enforce performance by Lessee and/or to recover damages for the breach thereof, (iv) demand that Lessee deliver the Equipment forthwith to Lessor at Lessee's expense at such place as Lessor may designate, (v) without notice, liability, or legal process, enter by itself and/or by its agents onto the Premises or any other premises of or under the control or jurisdiction of Lessee or any agent of Lessee where the Equipment may be or by Lessor is believed to be and repossess all or any part of the Equipment, Lessee hereby expressly waiving all further rights to possession of the Equipment and all claims for injuries suffered through or loss caused by such repossession, and/or (vi) proceed to enforce any and all other rights and remedies provided hereby and by applicable law, including, but not limited to, the Uniform Commercial Code as adopted by and for the State of Illinois (the "UCC").

(c) If Lessor shall recover the Equipment, it shall have the right, but not the obligation, to relet the Equipment or to sell the Equipment at either a public or private sale, or both, by way of one or more contracts or transactions, for cash or on such terms and conditions, and in such manner and at such places, as Lessor determines to be



Capital Corporation

commercially reasonable. Lessor shall give notice to Lessee of the disposition of the Equipment as required by applicable law. Should any proceedings be instituted by or against Lessor hereunder and/or for possession of the Equipment or for any other relief, Lessee shall pay and/or reimburse Lessor for all attorney's fees and expenses so incurred by Lessor.

(d) Notwithstanding any recovery of the Equipment by Lessor, if Lessor elects to terminate the Lease, Lessor shall also be entitled to recover immediately as liquidated damages for loss of the bargain and not as penalty any unpaid Rent that accrued on or before the occurrence of the Lessee Event of Default plus the applicable payment amount set forth in the Discount Annex to the Schedule (the "Default Payment"), which Default Payment shall incur interest, to the extent unpaid, at the lower of two percent (2%) per month or the highest legal contract rate permitted by applicable law, from the date of the Lessee Event of Default until the date on which the Default Payment is paid in full (the "Default Interest"). Upon the actual receipt by Lessor of any proceeds from disposition of the Equipment as hereinabove provided, Lessor shall first apply the same to satisfy Lessor's costs and expenses incurred in connection with any such disposition of the Equipment (including, but not limited to, costs and expenses incurred in connection with the removal, repair, storage, marketing, and sale of the Equipment and reasonable attorneys' fees incurred in connection with the same), then to satisfy any outstanding amount of Default Interest, then to satisfy any outstanding amount of the Default Payment, and, then, if there shall be any amount remaining, Lessor shall pay to Lessee that amount thereof as shall not exceed the amount of any Default Payment or Default Interest payments previously made by Lessee pursuant to this Section 18. If Purchase Options A or C are applicable to a Lease, any proceeds in excess of the foregoing amount to be paid to Lessee will also be paid, without interest and subject to the rights of third parties, by Lessor to Lessee; provided, however, that, in the event Lessee shall be in default under or be otherwise obligated to Lessor under any other lease or other agreement with Lessor, Lessor shall be entitled to apply all or any portion of such excess to any other amounts due to Lessor by Lessee.

(e) If any Lease is deemed to be a security agreement under the UCC, to the extent so deemed and otherwise as a precautionary measure only, Lessee hereby grants Lessor a first priority security interest in and to the Equipment and all replacement parts, additions, attachments, repairs, and accessories incorporated therein and/or affixed thereto, whether now or hereafter acquired, and all proceeds thereof and receivables therefrom and Lessor shall have all rights of a secured party under the UCC.

19. INDEMNITY: Lessee agrees that Lessor shall not be liable to Lessee for, and Lessee shall indemnify and hold Lessor harmless from and against, any and all liability, loss, damage, expense, causes of action, suits, claims, or judgments arising from or caused directly or indirectly by (i) any loss relating to or arising from the Equipment or its use (ii) Lessee's failure to promptly perform any of its obligations under any Lease, or (iii) injury to any person or property resulting from or based upon the actual or alleged use, operation, or delivery of the Equipment. Lessee shall, at its own cost and expense, defend any and all suits which may be brought against Lessor, either alone or in conjunction with others, upon any such liability or claim and shall satisfy, pay, and discharge any and all judgments and fines that may be recovered against Lessor in any such action.

20. EXPIRATION OF LEASE: Upon the expiration or termination of a Rental Term (other than pursuant to a Lessee Event of Default or Lessee exercising any purchase option right granted to it), (i) Lessee shall, at its sole expense and in the manner and as directed by Lessor, inspect, disassemble, remove, crate, pack, and otherwise prepare the Equipment for return to Lessor and deliver the Equipment to Lessor (all freight and insurance charges being prepaid by Lessee) at the place where Lessor shall designate, unencumbered and in the same condition as when received by Lessee, reasonable wear and tear resulting from the use thereof alone excepted, or (ii) at the option and upon the request of Lessor, Lessee shall store the Equipment on Lessee's premises at an inside location protected from the weather and elements, without charge to Lessor, for a period of up to one hundred eighty (180) days following the date of expiration or termination of the Rental Term. During any such storage period, Lessee shall not use the Equipment for any purpose. Upon the expiration of any such storage period or earlier if directed by Lessor, Lessee will return the Equipment to Lessor in accordance with the provisions of Subsection (i) above. If Lessee shall fail

**MAN**
Capital Corporation

to return any Equipment to Lessor as and when required hereinabove, all of Lessee's obligations under the Lease shall continue or resume (as the case may be) and Lessee shall continue to pay the Post Rental Term Rent to Lessor, as liquidated damages for lost rental income and not as a penalty, in the amount and at the installment intervals applicable to the Lease, until such time as the Equipment is returned to and received by Lessor.

**21. FURTHER ASSURANCES:** Lessee shall execute and deliver to Lessor, upon Lessor's request, such instruments and assurances as Lessor deems necessary or advisable for the confirmation of a Lease and Lessor's rights hereunder and thereunder, including, but not limited to, such UCC notice of lease or other filings as shall be deemed necessary or appropriate by Lessor in its sole discretion, and the filing or recording of this Agreement or any Lease at Lessor's option.

**22. MISCELLANEOUS:** (a) <u>Definitions</u>. Any capitalized terms not defined herein shall have the meanings or bear the designations ascribed to them in the relevant Schedule. As used in this Agreement, the following terms shall have the following meanings unless the context otherwise requires:

    (i) "day" or "days" means a calendar day or days, as the case may be;

    (ii) "lien" means and includes any lien, pledge, mortgage, security interest, claim, lease, charge, option, right of first refusal, easement, servitude, transfer restriction under any shareholder or other agreement, or any other encumbrance, restriction, or limitation whatsoever; and

    (iii) "registered person" means and includes any corporation, partnership, firm, joint venture, association, joint-stock company, or trust required to file articles of organization or other similar documents in order to properly establish the fact of its legal existence.

    (b) <u>Notices</u>. Any notice or other communication required or which may be given hereunder shall be in writing and shall be delivered personally, sent by facsimile transmission, or sent by certified or express mail, return receipt requested and postage prepaid, and shall be deemed given four (4) days after the date so delivered personally, sent by facsimile transmission, or mailed, to the parties at their respective addresses set forth hereinabove. Either party may by notice given in accordance herewith to the other party designate another address or person for receipt of notices hereunder.

    (c) <u>Amendments and Waivers</u>. This Agreement may be amended, modified, superseded, canceled, renewed, or extended, and the terms and conditions hereof may be waived, only by a written instrument signed by each of the parties or, in the case of a waiver, by the party waiving compliance. No delay on the part of either party in exercising any right, power, or privilege hereunder shall operate as a waiver thereof. No waiver on the part of either party of any right, power, or privilege hereunder, nor any single or partial exercise of any right, power, or privilege hereunder, shall preclude any other or further exercise thereof or the exercise of any other right, power, or privilege hereunder.

    (d) <u>Invalidity</u>. Any provision of this Agreement which may be determined by competent authority to be prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

    (e) <u>Assignment; Parties Bound by Agreement</u>. Lessee shall not, without the express prior written consent of Lessor, part with possession or control of Equipment, attempt or purport to sublet, assign, sell, pledge, mortgage, or otherwise encumber all or any portion of the Equipment or any interest therein or otherwise dispose of or encumber any right, obligation, or interest under a Lease in any way whatsoever, except by operation of law. Lessor may sell, assign, transfer, grant security interests in, or otherwise dispose of any or all of its interests in or rights under this Agreement or any Schedule hereto, together with its obligations, and Lessee hereby consents to the same. This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and to their respective heirs, executors, administrators, successors, and permitted assigns.


Capital Corporation

(f) <u>Entire Agreement</u>. Each Lease contains the entire agreement between the parties with respect to the subject matter thereof and the transactions related thereto and supersede any and all prior agreements, promises, and representations, written or oral, with respect thereto.

(g) <u>Variations in Pronouns</u>. All pronouns and any variations thereof refer to the masculine, feminine, or neuter, singular or plural, as the identity of the person or persons may require.

(h) <u>Headings</u>. The headings in this Agreement are for reference purposes only and shall not in any way affect the meaning or interpretation of this Agreement.

(i) <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois applicable to agreements made and to be performed entirely within such jurisdiction; provided, however, that Lessor shall have the right, to the extent necessary or deemed appropriate by it, to apply the law of the jurisdiction in which the Equipment is located.

(j) <u>Consent to Jurisdiction</u>. Except as to actions by Lessor against Lessee, which may, at the sole option of Lessor, be asserted against Lessee (i) in the jurisdiction in which an underlying action giving rise to a claim of indemnity was filed, (ii) in the jurisdiction in which the Equipment is, from time to time, located, or (iii) the forum provided for below, Lessor and Lessee hereby consent to the exclusive jurisdiction of the appropriate state court in DuPage County, Illinois, or the federal court for the Northern District of Illinois, to resolve all legal actions, suits, proceedings, disputes, controversies, or disagreements between the parties and each party agrees not to assert, by way of motion, as a defense, or otherwise, in any such action, suit, proceeding, dispute, controversy, or disagreement, any claim that it is not subject personally to the jurisdiction of such court, that any such action, suit, or proceeding is brought in an inconvenient forum, that the venue of any such action, suit, or proceeding is improper, or that this Agreement or the subject matter hereof may not be enforced in or by such court. Each party further irrevocably submits to the jurisdiction of any such court in any such action, suit, or proceeding.

(k) <u>Waiver of Jury Trial</u>. **THE PARTIES HEREBY KNOWINGLY WAIVE THEIR RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION LITIGATED IN ANY COURT BASED UPON, WITH RESPECT TO, IN CONNECTION WITH, OR ARISING OUT OF THIS AGREEMENT OR ANY SCHEDULE HERETO AND ANY AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS. IN THE EVENT OF LITIGATION, A COPY OF THIS AGREEMENT MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.**

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written.

MAN Capital Corporation
Lessor

By: _Richard J. Pierschala_

Name: _Richard J. Pierschala_

Title: _General Manager Financing & Leasing_

Date Signed: _10/13/98_

Sioux Printing, Inc.
Lessee

By: _(signature)_

Name: _Jon S. Lewis_

Title: _President_

Date Signed: _9/22/98_

TIN:    **46-025992**



**MAN**
Capital Corporation

**EQUIPMENT SCHEDULE NO. 001**
(this "Schedule")
TO

THE MASTER LEASE AGREEMENT (this "Agreement"), dated as of **September 15, 1998**, by and between MAN Capital Corporation, a Delaware corporation with a place of business located at 17 State Street, New York, New York 10004 ("Lessor"), and **Sioux Printing, Inc.,** a **South Dakota** corporation with a place of business located at **500 East 52nd Street North, Sioux Falls, South Dakota 57104** ("Lessee").

**LEASE:** Lessee agrees to lease (this "Lease") from Lessor the Equipment described on the attached Equipment Rider, including all replacement parts, additions, attachments, repairs, and accessories incorporated therein and/or affixed thereto, whether now in Lessee's possession or hereafter acquired, and all proceeds thereof and receivables therefrom (the "Equipment"), below subject to the terms and conditions of the Agreement (except as may be modified in this Schedule) and those set forth in the Exhibits indicated below and attached hereto:

| | | | |
|---|---|---|---|
| ☐ | Assignment of Purchase Contract | ☒ | Landlord Waiver/Mortgagee Waiver |
| ☒ | Insurance Certificate | ☐ | Construction Mortgage Subordination |
| ☒ | Discount Annex | ☐ | Amendment of Lease Agreement |
| ☒ | Corporate Resolution/Incumbency Certificate | ☐ | Opinion of Counsel to Lessee |

**RENT:** Lessee agrees to pay Lessor at its address set forth above, beginning on the Acceptance Date and on the same day of each month (or other calendar designation indicated below) of the Rental Term, the following Rent for the Equipment. The Advance Rent is due upon the execution of this Schedule and will be applied as indicated below.

Equipment Cost:        $    2,404,490.00          Rental Term:    96    months
Freight Cost:          $            0 .
Other Expenses:        $            0 .
Total Equipment Cost:  $    2,404,490.00 .

Advance Rent: Payments of $  50,000.00  , $    N/A    , and $    N/A    , totaling $  50,000.00  , plus applicable sales tax, applied, respectively, to the first and last    0    installment(s) of Rent

Rent:    3    Monthly installments of $        0.00    each, plus applicable sales tax
         3    Monthly installments of $    18,000.00   each, plus applicable sales tax
         6    Monthly installments of $    22,000.00   each, plus applicable sales tax
        12    Monthly installments of $    27,000.00   each, plus applicable sales tax
        72    Monthly installments of $    31,978.00   each, plus applicable sales tax

Post-Rental Term Rent:    Monthly   installments of $    31,978.00    each, plus applicable sales tax



EXHIBIT
B

980916Sioux EquipSched

1 of 3

Lessee's Initials



Capital Corporation

**INSURANCE:** Lessee shall specifically insure, at its sole cost, all Equipment for an amount equal to the original acquisition cost thereof to Lessor against " all risks, " including coverage against seismic and flood damage, shall obtain and maintain commercial general liability insurance, together with contractual liability coverage (specifically including the indemnification responsibilities of Lessee contained herein) in an amount no less than $3,000,000.00 for claims resulting from personal injury, bodily injury, or property damage, and obtain and maintain worker's compensation insurance in the amounts and as otherwise required by law, all in accordance with, in the form, and subject to the terms and conditions stated in Section 10 of the Agreement.

**PURCHASE OPTION:**
(a) So long as no Lessee Event of Default shall have occurred and be continuing, Lessor does hereby grant Lessee the option to purchase the Equipment at the end of the Rental Term upon (i) notice delivered to Lessor no less than one hundred eighty (180) days prior to the end of the Rental Term and (ii) payment in cash to Lessor on or before the end of the Rental Term of the amount of Purchase Option designated below.

(b) If Lessee shall fail to timely exercise its purchase option right granted in Subsection (a) above, Lessor may nevertheless, in its sole and absolute discretion, consider Lessee's request to purchase the Equipment upon written notice of such request received by Lessor prior to the end of the Rental Term. In the event Lessor shall agree to so sell the Equipment, Lessee shall purchase the same as of the date which is one hundred eighty (180) days after the date on which Lessor gives Lessee written notice of its determination to sell the Equipment to Lessee (the "Alternate Purchase Option Date"), subject to the payment in cash to Lessor on or before the Alternate Purchase Option Date of the amount of the Purchase Option designated below; provided, however, that, notwithstanding Lessor's agreement to sell the Equipment to Lessee as described in this Subsection (b), upon the expiration of the Rental Term, all of Lessee's obligations under this Lease shall continue and Lessee shall continue to pay Rent to Lessor, as liquidated damages for lost rental income and not as a penalty, in the amount and at the installment intervals applicable to this Lease, until the later of the Alternate Purchase Option Date or the date on which Lessee pays all amounts due in connection with its purchase of the Equipment.

(c) If Purchase Option B is designated below, the amount of the Purchase Option shall be the installed fair market value of the Equipment as of the end of the Rental Term (or, in the case of a sale pursuant to Subsection (b) above, the Alternate Purchase Option Date), being an amount that would be obtained in an arm's-length transaction between an informed and willing buyer (other than Lessee or a dealer in used equipment of a type similar to the Equipment) and an informed and willing seller under no compulsion to sell and, in such determination, the cost of removing the Equipment from the Premises shall not be included in such value. If Lessor and Lessee cannot agree upon a fair market value for the Equipment no less than sixty (60) days prior to the end of the Rental Term or the Alternate Purchase Option Date (as the case may be), each shall appoint an appraiser, and the two appraisers so appointed shall select a third appraiser, and such appraisers shall determine the fair market value of the Equipment. Rent shall not be credited against the amount of the Purchase Option of the Equipment. Lessor shall bear the cost of the appraiser appointed by it and Lessee shall bear the cost of the aforementioned third appraiser and that appointed by it.

Purchase Option:    ☐ A: $1.00    ☒ B: Fair Market Value    ☐ C:_____

**LOCATION OF EQUIPMENT:** The Equipment will be installed at the following premises of Lessee (the "Premises"):

| 500 East 52nd Street North | Sioux Falls | Minnehaha | South Dakota | 57104 . |
|---|---|---|---|---|
| Street Address | City | County | State | Zip Code |

The Premises are: ☐ leased by Lessee (provide copy of lease) ☒ owned by Lessee (provide copy of deed)

980824Manning EquipSched

Lessee's Initials



**MAN**
Capital Corporation

**SUPPLIER:**    MAN Roland Inc., 800 East Oak Hill Drive, Westmont, IL 60559

**ADDITIONAL SECURITY AND COLLATERAL:** As an inducement to Lessor to enter into this Lease described in this Schedule and as additional security for the satisfaction of Lessee's obligations hereunder and under any and all other leases described in any other Schedule to the Agreement, Lessee shall deliver or cause to be delivered the Guaranty and Security Documents indicated below and, pursuant thereto, Lessee hereby pledges to Lessor a security interest in the property of Lessee designated below and more particularly described in the attached Exhibits ("Additional Collateral"):

Guaranty and Security Documents:

☐    Individual Guarantee
☐    Corporate Guarantee
☐    Lessee Security Agreement
      granting Lessor a security interest in:
☐       Other Equipment
☑       Accounts Receivable
☐       Inventory

Property Pledged:

☐    Certificate of Deposit
☐    Security Deposit
☐    Letter of Credit

BY EXECUTING THIS SCHEDULE, LESSEE MAKES A FIRM OFFER TO LEASE THE EQUIPMENT AND ACKNOWLEDGES THAT IT HAS SELECTED THE EQUIPMENT AND HAS READ THIS SCHEDULE AND THE AGREEMENT, INCLUDING THE WARRANTY PROVISIONS AND TERMS AND CONDITIONS CONTAINED THEREIN, WHICH TERMS AND CONDITIONS ARE EXPRESSLY ACKNOWLEDGED AS BEING A PART HEREOF AND BINDING UPON THE PARTIES, AND ALL EXHIBITS AND OTHER ATTACHMENTS HERETO INDICATED ABOVE.    THIS SCHEDULE SHALL BE BINDING ON LESSOR ONLY WHEN IT HAS BEEN ACCEPTED BY AN AUTHORIZED OFFICER OF LESSOR.

Lessee Hereby Acknowledges Receipt of an Executed Copy of this Schedule

MAN Capital Corporation
Lessor

By: _Richard J. Pierzchala_

Name: _RICHARD J. PIERZCHALA_

Title: _General Manager Financing + Leasing_

Date Signed: _10/15/98_

Sioux Printing, Inc.
Lessee

By: _Jon Lewin_

Name: _Jon S. Lewin_

Title: _President_

Date Signed: _9/22/98_

TIN:        46-025992

Lessee's Initials _JL_



Capital Corporation

## Rider 1

Rider  1  to Equipment Schedule No.  001  to the Master Lease Agreement, dated as of <u>September 15, 1998</u>, between <u>MAN Capital Corporation</u> as Lessor, and <u>Sioux Printing, Inc.</u>, as Lessee.

Lessor and Lessee hereby agree to amend the "Rent:" subsection of the "Rent" provision of the above referenced Equipment Schedule No. <u>001</u> by deleting the same and inserting the following in its place:

" Rent: <u>  3  </u>  Monthly installments of $ <u>    0.00  </u> each, plus applicable sales tax
<u>  3  </u>  Monthly installments of $ <u>18,000.00</u> each, plus applicable sales tax = 19,080
<u>  6  </u>  Monthly installments of $ <u>22,000.00</u> each, plus applicable sales tax
<u>  3  </u>  Monthly installments of $ <u>27,000.00</u> each, plus applicable sales tax
<u>  3  </u>  Monthly installments of $ <u>18,000.00</u> each, plus applicable sales tax
<u>  3  </u>  Monthly installments of $ <u>22,000.00</u> each, plus applicable sales tax
<u>  6  </u>  Monthly installments of $ <u>25,000.00</u> each, plus applicable sales tax
<u> 12 </u>  Monthly installments of $ <u>30,000.00</u> each, plus applicable sales tax
<u> 57 </u>  Monthly installments of $ <u>34,188.83</u> each, plus applicable sales tax"

All terms and conditions of the aforesaid Master Lease Agreement and Equipment Schedule No. <u>001</u> and any and all other documents and agreements executed and/or delivered pursuant thereto, remain in full force and effect, except as expressly modified or amended in this Rider <u>  1  </u> .

Lessor:    MAN Capital Corporation          Lessee:        Sioux Printing, Inc.

By: _____               By: _____

Title: PRESIDENT                           Title: President

Date: 06/30/00                             Date: 6/22/00

071999c

OD 1



Capital Corporation

## Equipment Rider

This Equipment Rider is attached to, made a part of, and incorporated by reference in the Equipment Schedule No. 001 between Sioux Printing, Inc., as Lessee, and MAN Capital Corporation, as Lessor.

One (1) New Roland 700 Series highspeed Six (6) Color sheetfed offset Printing Press, Model 706LV, with: Computer Controlled Inker-CCI (MA00727), Automatic Plate Changer (MA01533), Impression Cylinder Washer-ICW (MA01570), Impression Cylinder Washer-Single Coater (MA01705), Coater Module with Extension (MA01466), Pierry SW Dryer-Coater, Ternes APL Plate Punch, TriService Single Zone Ink Temperature Control Cooling Unit, and including all standard equipment, plus all replacement parts, additions, attachments, repairs and accessories incorporated therein and/or affixed thereto, in each case, whether now in the possession of Lessee/Debtor or hereafter acquired, and all proceeds thereof and receivables therefrom.

Serial Number:

Lessor:

MAN Capital Corporation

By: _Richard J. Pierzchala_

Title: _General Manager_
_Financing & Leasing_

Lessee:

Sioux Printing, Inc.

By _[signature]_

Title: _President_


Capital Corporation

# RIDER 2

This Rider **2** ("Rider 2"), dated as of **February 14, 2002**, is attached to, made a part of, and incorporated by reference in Equipment Schedule No. **001** (the "Equipment Schedule") to the Master Lease Agreement, dated **September 15, 1998**, between MAN Capital Corporation, as Lessor, and **Sioux Printing, Inc.**, as Lessee (the "Master Lease Agreement" and, together with the Equipment Schedule, the "Lease");

As a consequence of Lessee's failure to timely pay all Rent as and when due under the Lease, as amended by Rider **1**, dated **June 22, 2000** ("Rider 1"), Lessee's account with Lessor has fallen into arrears and, as a consequence thereof, Lessee has requested a restructuring of the Rent structure established under the Lease, as amended by Rider 1 (the Lease, as so amended, being sometimes referred to herein as the "Existing Lease"), with respect to all Rent and other amounts currently due and outstanding and all other Rent scheduled to be paid by Lessee through the end of the Rental Term (including any and all accrued and unpaid late charges), all as of the date hereof and as described below (collectively, the "Lease Investment"), and Lessor has agreed to restructure said Rent structure subject to and in accordance with the terms and conditions set forth herein, each initially-capitalized term not otherwise defined herein having the meaning ascribed thereto in the Existing Lease.

Lessor and Lessee hereby agree to amend the terms and conditions of the Existing Lease as hereinafter set forth (the Existing Lease, as so amended, being sometimes referred to herein as the "Amended Lease"):

| Lease Investment: | | |
|---|---|---|
| | Current Investment Balance: | $2,153,822.33 |
| | Accrued Rentals: | $ 61,754.72 |
| | Accrued Late Charges: | $ 29,940.00 |
| | Waived Late Charges: | ($ 989.48) |
| | Lease Investment: | $2,244,527.57 |

| | Accrued Rental Periods and Amounts: | |
|---|---|---|
| | December 4, 2001 | $30,000.00 |
| | Partial Received | $28,245.28 |
| | Net December 4, 2001 Rent | $ 1,754.72 |
| | January 4, 2002 | $30,000.00 |
| | February 4, 2002 | $30,000.00 |
| | Accrued Rentals: | $61,754.72 |

Revised Rental Term:  The "Rental Term" is hereby increased from the original **Ninety-Six (96)** months to a period of **One Hundred Twenty Four ( 124 )** months.



Capital Corporation

Remaining Rental Term:    As of __**February 4, 2002**__, the "Remaining Rental Term" will be the period of __**Eighty Eight (88)**__ months commencing on such date.

Rent:    Lessee agrees to pay Lessor, at Lessor's address set forth in the Equipment Schedule, beginning on __**March 4, 2002**__ and on the same day of each following month of the Remaining Rental Term, the following Rent for the Equipment:

__1__ monthly installment  of **$ 45,000.00**  each, plus applicable sales tax
__4__ monthly installments of **$ 22,500.00**  each, plus applicable sales tax
__6__ monthly installments of **$ 30,000.00**  each, plus applicable sales tax
__76__ monthly installments of **$ 35,000.00**  each, plus applicable sales tax
__1__ monthly installment  of **$ 26,146.00**  each, plus applicable sales tax

Revised Post-Rental Term Rent:  monthly installments of **$ 35,000.00** each, plus applicable sales tax.

Revised Purchase Option:    C: **$ 1,000.00** .

As an inducement to Lessor to enter into this Rider __2__ to further secure the payment of Rent and the satisfaction and performance of all other obligations imposed upon Lessee under the Amended Lease, Lessee hereby conveys to Lessor, and unto Lessor's successors and assigns, a security interest in any and all of Lessee's inventory (including raw materials, work in process, finished goods, returns, materials, parts, and supplies), accounts, contract rights, general intangibles, instruments, security documents and chattel paper, and any and all other intangible property of every kind and description, all whether presently existing, now owned, or hereafter arising or acquired, and the books and records (including without limitation all computer programs, tapes, and electronic processing software) of Lessee pertaining to any or all of the foregoing, and all replacements, additions, substitutions, and accessories thereof and thereto and any and all proceeds (including insurance proceeds) thereof (collectively, the "Additional Collateral"), which security interest shall be retained by Lessor until all obligations of Lessee under the Amended Lease or under any other agreement between Lessee and Lessor (or any affiliate of Lessor) are paid or satisfied in full, however such obligations arose and whether such obligations presently exist or hereafter arise.

The security interest granted in the foregoing paragraph shall be governed by and subject to the terms of the Amended Lease.



Capital Corporation

By its execution of this Rider **2** any other instruments evidencing same, Lessee shall thereby be deemed to have made the following representation and warranty to Lessor:

Lessee shall not grant to or suffer to exist any security interest in the Additional Collateral in favor of any person other than Lessor subsequent to the date of this Rider **2** . In the event any person other than Lessor hereafter acquires or possesses a lien on or other right or interest in the Additional Collateral in contravention of the preceding sentence, the enforceability of this Rider **2** by Lessee and Lessor's acceptance of the terms and conditions hereof are and shall be expressly contingent upon and subject to, at Lessee's sole cost and expense, (i) Lessee obtaining from any such person a subordination agreement which provides for the subordination of any superior lien, right, or interest to the security interest of Lessor, (ii) Lessee filing any and all instruments with any and all governmental filing authorities deemed necessary or appropriate by Lessor to evidence any such subordination agreement of record, and (iii) Lessee providing Lessor with executed copies of all such subordination agreements and certified copies of all instruments reflecting the filing of the evidence of same with all governmental filing authorities designated by Lessor.

All terms and conditions of the aforesaid Master Lease and Equipment Schedule and any and all other documents and agreements executed or delivered pursuant thereto remain in full force and effect and shall apply to this Rider **2** as if set forth herein in their entirety, except as expressly modified or amended in this Rider **2** .

Lessor:     MAN Capital Corporation

By: _____

Name: _____

Title: _____

Lessee:     Sioux Printing, Inc.

By: _____

Name: Jon S. Lewin

Title: President



Capital Corporation

## CERTIFICATE OF ACCEPTANCE
### (Lease)

To:    MAN Capital Corporation               (212) 509-4549
       17 State Street                       (212) 269-2854 (facsimile)
       New York, NY 10004
       Attention: Contract Administrator

| | |
|---|---|
| Lessee: | Sioux Printing, Inc. |
| Master Lease Agreement Dated: | September 15, 1998 |
| Equipment Schedule Number: | 001 |
| Supplier: | MAN Roland Inc., 800 East Oak Hill Drive, Westmont, Illinois 60559 |
| Supplier Machinery Contract Date: | September 15, 1998 |
| Equipment: | As described in attached Equipment Rider |
| Equipment Location: | 500 East 52nd Street North, Sioux Falls, South Dakota 57104 |

The undersigned, a duly authorized representative of Lessee, hereby certifies to MAN Capital Corporation ("Lessor"), all capitalized terms not otherwise defined hereinafter having the meanings or designations ascribed to them above or in the Master Lease Agreement or Equipment Schedule described above, that:

1.    All of the Equipment has been delivered to and received by Lessee on or prior to the date set forth below (the "Acceptance Date").

2.    The Equipment has been fully installed, all work necessary to operate the Equipment has been completed, and the Equipment is in good working condition and is in all respects satisfactory to Lessee.

3.    Lessee has inspected the Equipment and Lessee hereby irrevocably accepts the Equipment for lease and for all other purposes under and pursuant to the Master Lease Agreement and Equipment Schedule as of the Acceptance Date.

4.    Lessor has fully and satisfactorily performed all convenants and conditions to be performed by it under the Master Lease Agreement and Equipment Schedule.

5.    No event has occurred which would allow Lessor to declare a Lessee Event of Default and all representations and warranties of Lessee made by Lessee in the Master Lease Agreement or Equipment Schedule are true as of the Acceptance Date.

6.    Lessee hereby irrevocably approves Supplier's invoice for the Equipment and authorizes Lessor to acquire ownership of and to purchase the Equipment.

Lessee:    Sioux Printing, Inc.

By:    _____

Print Name:    Jon S. Lewin

Date:    2/4/99



EXHIBIT
C
tabbies

990202Sioux Accept Cert



**MAN**
Capital Corporation

## EQUIPMENT SCHEDULE NO. 002
(this "Schedule")
TO

THE MASTER LEASE AGREEMENT (this "Agreement"), dated as of **September 15, 1998**, by and between MAN Capital Corporation, a Delaware corporation with a place of business located at 17 State Street, New York, New York 10004 ("Lessor"), and **Sioux Printing, Inc.,** a South Dakota corporation with a place of business located at **500 East 52nd Street North, Sioux Falls, South Dakota 57104** ("Lessee").

**LEASE:** Lessee agrees to lease (this "Lease") from Lessor the Equipment described on the attached Equipment Rider, including all replacement parts, additions, attachments, repairs, and accessories incorporated therein and/or affixed thereto, whether now in Lessee's possession or hereafter acquired, and all proceeds thereof and receivables therefrom (the "Equipment"), below subject to the terms and conditions of the Agreement (except as may be modified in this Schedule) and those set forth in the Exhibits indicated below and attached hereto:

| | | | |
|---|---|---|---|
| ☐ | Assignment of Purchase Contract | ☒ | Landlord Waiver/Mortgagee Waiver |
| ☒ | Insurance Certificate | ☐ | Construction Mortgage Subordination |
| ☒ | Discount Annex | ☐ | Amendment of Lease Agreement |
| ☒ | Corporate Resolution/Incumbency Certificate | ☐ | Opinion of Counsel to Lessee |

**RENT:** Lessee agrees to pay Lessor at its address set forth above, beginning on the Acceptance Date and on the same day of each month (or other calendar designation indicated below) of the Rental Term, the following Rent for the Equipment. The Advance Rent is due upon the execution of this Schedule and will be applied as indicated below.

| | | | |
|---|---|---|---|
| Equipment Cost: | $ 2,599,361.00 | Rental Term: | 96 months |
| Freight Cost: | $ 0 | | |
| Other Expenses: | $ 0 | | |
| Total Equipment Cost: | $ 2,599,361.00 | | |

Advance Rent: Payments of $142,000.00, $ N/A , and $ N/A , totaling $142,000.00, plus applicable sales tax, applied, respectively, to the first and last 0 installment(s) of Rent

| Rent: | | | |
|---|---|---|---|
| 3 | Monthly installments of $ | 0.00 | each, plus applicable sales tax |
| 3 | Monthly installments of $ | 18,000.00 | each, plus applicable sales tax |
| 5 | Monthly installments of $ | 22,000.00 | each, plus applicable sales tax |
| 1 | Monthly installments of $ | 47,000.00 | each, plus applicable sales tax |
| 5 | Monthly installments of $ | 27,000.00 | each, plus applicable sales tax |
| 1 | Monthly installments of $ | 52,000.00 | each, plus applicable sales tax |
| 5 | Monthly installments of $ | 27,000.00 | each, plus applicable sales tax |
| 1 | Monthly installments of $ | 77,000.00 | each, plus applicable sales tax |
| 72 | Monthly installments of $ | 32,269.00 | each, plus applicable sales tax |

Post-Rental Term Rent:    Monthly  installments of $    32,269.00    each, plus applicable sales tax

**EXHIBIT**
**D**
tabbies

990428Sioux EquipSched

1 of 3

**Lessee's Initials:** _____



Capital Corporation

**INSURANCE:** Lessee shall specifically insure, at its sole cost, all Equipment for an amount equal to the original acquisition cost thereof to Lessor against " all risks, " including coverage against seismic and flood damage, shall obtain and maintain commercial general liability insurance, together with contractual liability coverage (specifically including the indemnification responsibilities of Lessee contained herein) in an amount no less than $3,000,000.00 for claims resulting from personal injury, bodily injury, or property damage, and obtain and maintain worker's compensation insurance in the amounts and as otherwise required by law, all in accordance with, in the form, and subject to the terms and conditions stated in Section 10 of the Agreement.

**PURCHASE OPTION:**

(a) So long as no Lessee Event of Default shall have occurred and be continuing, Lessor does hereby grant Lessee the option to purchase the Equipment at the end of the Rental Term upon (i) notice delivered to Lessor no less than one hundred eighty (180) days prior to the end of the Rental Term and (ii) payment in cash to Lessor on or before the end of the Rental Term of the amount of Purchase Option designated below.

(b) If Lessee shall fail to timely exercise its purchase option right granted in Subsection (a) above, Lessor may nevertheless, in its sole and absolute discretion, consider Lessee's request to purchase the Equipment upon written notice of such request received by Lessor prior to the end of the Rental Term. In the event Lessor shall agree to so sell the Equipment, Lessee shall purchase the same as of the date which is one hundred eighty (180) days after the date on which Lessor gives Lessee written notice of its determination to sell the Equipment to Lessee (the "Alternate Purchase Option Date"), subject to the payment in cash to Lessor on or before the Alternate Purchase Option Date of the amount of the Purchase Option designated below; provided, however, that, notwithstanding Lessor's agreement to sell the Equipment to Lessee as described in this Subsection (b), upon the expiration of the Rental Term, all of Lessee's obligations under this Lease shall continue and Lessee shall continue to pay Rent to Lessor, as liquidated damages for lost rental income and not as a penalty, in the amount and at the installment intervals applicable to this Lease, until the later of the Alternate Purchase Option Date or the date on which Lessee pays all amounts due in connection with its purchase of the Equipment.

(c) If Purchase Option B is designated below, the amount of the Purchase Option shall be the installed fair market value of the Equipment as of the end of the Rental Term (or, in the case of a sale pursuant to Subsection (b) above, the Alternate Purchase Option Date), being an amount that would be obtained in an arm's-length transaction between an informed and willing buyer (other than Lessee or a dealer in used equipment of a type similar to the Equipment) and an informed and willing seller under no compulsion to sell and, in such determination, the cost of removing the Equipment from the Premises shall not be included in such value. If Lessor and Lessee cannot agree upon a fair market value for the Equipment no less than sixty (60) days prior to the end of the Rental Term or the Alternate Purchase Option Date (as the case may be), each shall appoint an appraiser, and the two appraisers so appointed shall select a third appraiser, and such appraisers shall determine the fair market value of the Equipment. Rent shall not be credited against the amount of the Purchase Option of the Equipment. Lessor shall bear the cost of the appraiser appointed by it and Lessee shall bear the cost of the aforementioned third appraiser and that appointed by it.

Purchase Option:  ☐ A: $1.00     ☒ B: Fair Market Value     ☐ C:_____

**LOCATION OF EQUIPMENT:** The Equipment will be installed at the following premises of Lessee (the "Premises"):

| 500 East 52nd Street North | Sioux Falls | Minnehaha | South Dakota | 57104 |
|---|---|---|---|---|
| Street Address | City | County | State | Zip Code |

The Premises are: ☐ leased by Lessee (provide copy of lease) ☒ owned by Lessee (provide copy of deed)

990428SiouxEquipSched

Lessee's Initials:



Capital Corporation

**SUPPLIER:**    MAN Roland Inc., 800 East Oak Hill Drive, Westmont, IL 60559

**ADDITIONAL SECURITY AND COLLATERAL:** As an inducement to Lessor to enter into this Lease described in this Schedule and as additional security for the satisfaction of Lessee's obligations hereunder and under any and all other leases described in any other Schedule to the Agreement, Lessee shall deliver or cause to be delivered the Guaranty and Security Documents indicated below and, pursuant thereto, Lessee hereby pledges to Lessor a security interest in the property of Lessee designated below and more particularly described in the attached Exhibits ("Additional Collateral"):

Guaranty and Security Documents:

☐ Individual Guarantee
☐ Corporate Guarantee
☐ Lessee Security Agreement granting Lessor a security interest in:
    ☐ Other Equipment
    ☐ Accounts Receivable
    ☐ Inventory

Property Pledged:

☐ Certificate of Deposit
☐ Security Deposit
☐ Letter of Credit

BY EXECUTING THIS SCHEDULE, LESSEE MAKES A FIRM OFFER TO LEASE THE EQUIPMENT AND ACKNOWLEDGES THAT IT HAS SELECTED THE EQUIPMENT AND HAS READ THIS SCHEDULE AND THE AGREEMENT, INCLUDING THE WARRANTY PROVISIONS AND TERMS AND CONDITIONS CONTAINED THEREIN, WHICH TERMS AND CONDITIONS ARE EXPRESSLY ACKNOWLEDGED AS BEING A PART HEREOF AND BINDING UPON THE PARTIES, AND ALL EXHIBITS AND OTHER ATTACHMENTS HERETO INDICATED ABOVE. THIS SCHEDULE SHALL BE BINDING ON LESSOR ONLY WHEN IT HAS BEEN ACCEPTED BY AN AUTHORIZED OFFICER OF LESSOR.

Lessee Hereby Acknowledges Receipt of an Executed Copy of this Schedule

MAN Capital Corporation
Lessor

By: _Richard J. Przybilla_

Name: _RICHARD J. PIERZCHALA_

Title: _General Manager Financing & Leasing_

Date Signed: _5/17/99_

Sioux Printing, Inc.
Lessee

By: _Jon Lewin_

Name: _JON S LEWIN_

Title: _President_

Date Signed: ___April 28, 1999___

TIN:        46-025992

Lessee's Initials: _JL_


Capital Corporation

### Rider        1

Rider  1   to Equipment Schedule No.   002    , to the Master Lease Agreement, dated as of September 15,1998, between MAN Capital Corporation as Lessor, and Sioux Printing, Inc., as Lessee.

Lessor and Lessee hereby agree to amend the "Rent:" subsection of the "Rent" provision of the above referenced Equipment Schedule No. 002 by deleting the same and inserting the following in its place:

| " Rent: | | Monthly installments of $ | | each, plus applicable sales tax |
|---|---|---|---|---|
| 6 | | Monthly installments of $ | 0.00 | each, plus applicable sales tax |
| 6 | | Monthly installments of $ | 18,000.00 | each, plus applicable sales tax |
| 3 | | Monthly installments of $ | 22,000.00 | each, plus applicable sales tax |
| 5 | | Monthly installments of $ | 23,000.00 | each, plus applicable sales tax |
| 6 | | Monthly installments of $ | 29,000.00 | each, plus applicable sales tax |
| 1 | | Monthly installments of $ | 110,000.00 | each, plus applicable sales tax |
| 72 | | Monthly installments of $ | 34,082.16 | each, plus applicable sales tax" |

All terms and conditions of the aforesaid Master Lease Agreement and Equipment Schedule No.   002    and any and all other documents and agreements executed and/or delivered pursuant thereto, remain in full force and effect, except as expressly modified or amended in this Rider  1    .

Lessor:       MAN Capital Corporation           Lessee:        Sioux Printing, Inc.

By:   _____               By:   _____

Title:   PRESIDENT _____          Title:   President _____

Date:   06/30/00 _____             Date:   6/29/00 _____

oℨ꒩



**Equipment Rider**

This Equipment Rider is attached to, made a part of, and incorporated by reference in the Equipment Schedule No. 002, to Master Lease Agreement dated September 15, 1998 between Sioux Printing, Inc., as Lessee, and MAN Capital Corporation, as Lessor.

One (1) New Roland 700 Series High Speed Six (6) Color Sheetfed Offset Printing Press, Model 706 3B, Serial No. 8058 with: Turning Device 6/0 2/4 (MA01367), Coater with Extension (MA02127), Ink Temperature Control Preparation (MA02082), PPL-Power Plate Loading, Roller Covering Make Bottcher (WZ00671), Grafix Hitronic Spray (AU01464), Drip Tray (MA00069), Map Water Circulator/2 Dozers (MA02031), Air Supply Unit ASME Std. (MA02241) Impression Cylinder Washer (MA01708), CCI (MA00727), Double Sheet Detector (AN00389), Brush Type Impression Cylinder Washer (MA01705), Spare Coating Form Roller (MA01492), Convertible Anilox (MA01536), Quick Start (WZ01690), Recessed Feeder (AN00822), Recessed Delivery (AU01232), R700 Roller Cores, 480V.176 KVA GPI, CDS-1223 Dryer for a 706 Press, Color Command Single Zone, and including all standard equipment, plus all replacement parts, additions, attachments, repairs and accessories incorporated therein and/or affixed thereto, in each case, whether now in the possession of Lessee/Debtor or hereafter acquired, and all proceeds thereof and receivables therefrom.

Sellling Price: $2,543,816.00

One (1) New Baumann Pile Turner BSW3-1000LVD including all standard equipment, plus all replacement parts, additions, attachments, repairs and accessories incorporated therein and/or affixed thereto, in each case, whether now in the possession of Lessee/Debtor or hereafter acquired, and all proceeds thereof and receivables therefrom.

Selling Price: $55,545.00

Lessor:                                                    Lessee:

MAN Capital Corporation                    Sioux Printing, Inc.

By: _Richard J. Purzycki_                      By: _____

Title: _General Manager_                       Title: _President_
        _Financing + Leasing_

Equipment Rider To Equipment Schedule



Capital Corporation

# RIDER 2

This Rider **2** ("Rider 2"), dated as of **February 14, 2002**, is attached to, made a part of, and incorporated by reference in Equipment Schedule No. **002** (the "Equipment Schedule") to the Master Lease Agreement, dated **September 15, 1998**, between MAN Capital Corporation, as Lessor, and **Sioux Printing, Inc.**, as Lessee (the "Master Lease Agreement" and, together with the Equipment Schedule, the "Lease");

As a consequence of Lessee's failure to timely pay all Rent as and when due under the Lease, as amended by Rider **1**, dated **June 29, 2000** ("Rider 1"), Lessee's account with Lessor has fallen into arrears and, as a consequence thereof, Lessee has requested a restructuring of the Rent structure established under the Lease, as amended by Rider 1 (the Lease, as so amended, being sometimes referred to herein as the "Existing Lease"), with respect to all Rent and other amounts currently due and outstanding and all other Rent scheduled to be paid by Lessee through the end of the Rental Term (including any and all accrued and unpaid late charges), all as of the date hereof and as described below (collectively, the "Lease Investment"), and Lessor has agreed to restructure said Rent structure subject to and in accordance with the terms and conditions set forth herein, each initially-capitalized term not otherwise defined herein having the meaning ascribed thereto in the Existing Lease.

Lessor and Lessee hereby agree to amend the terms and conditions of the Existing Lease as hereinafter set forth (the Existing Lease, as so amended, being sometimes referred to herein as the "Amended Lease"):

| Lease Investment: | | |
|---|---|---|
| | Current Investment Balance: | $2,420,638.64 |
| | Accrued Rentals: | $ 147,277.53 |
| | Accrued Late Charges: | $ 32,740.00 |
| | Waived Late charges: | ($ 10,740.00) |
| | Lease Investment: | $2,589,916.17 |

Accrued Rental Periods and Amounts:

| | | |
|---|---|---|
| | November 27, 2001 | $110,000.00 |
| | Partial Received | $ 30,886.79 |
| | Net November 27, 2001 Rent | $ 79,113.21 |
| | December 27, 2001 | $ 34,082.16 |
| | January 27, 2002 | $ 34,082.16 |
| | Accrued Rents: | $147,277.53 |

Revised Rental Term:    The "Rental Term" is hereby increased from the original **Ninety-Six (96)** months to a period of **One Hundred Twenty Four (124)** months.


Capital Corporation

Remaining Rental Term:        As of __**January 27, 2002**__ , the "Remaining Rental Term" will be the period of __**Ninety-Five (95)**__ months commencing on such date.

Rent:        Lessee agrees to pay Lessor, at Lessor's address set forth in the Equipment Schedule, beginning on __**February 27, 2002**__ and on the same day of each following month of the Remaining Rental Term, the following Rent for the Equipment:

    __6__ monthly installments of __**$ 22,500.00**__ each, plus applicable sales tax
    __6__ monthly installments of __**$ 31,246.00**__ each, plus applicable sales tax
   __83__ monthly installments of __**$ 40,000.00**__ each, plus applicable sales tax

Revised Post-Rental Term Rent:  monthly installments of __**$ 40,000.00**__ each, plus applicable sales tax.

Revised Purchase Option:        C: __**$ 2,500.00**__ .

As an inducement to Lessor to enter into this Rider __2__ and to further secure the payment of Rent and the satisfaction and performance of all other obligations imposed upon Lessee under the Amended Lease, Lessee hereby conveys to Lessor, and unto Lessor's successors and assigns, a security interest in any and all of Lessee's inventory (including raw materials, work in process, finished goods, returns, materials, parts, and supplies), accounts, contract rights, general intangibles, instruments, security documents and chattel paper, and any and all other intangible property of every kind and description, all whether presently existing, now owned, or hereafter arising or acquired, and the books and records (including without limitation all computer programs, tapes, and electronic processing software) of Lessee pertaining to any or all of the foregoing, and all replacements, additions, substitutions, and accessories thereof and thereto and any and all proceeds (including insurance proceeds) thereof (collectively, the "Additional Collateral"), which security interest shall be retained by Lessor until all obligations of Lessee under the Amended Lease or under any other agreement between Lessee and Lessor (or any affiliate of Lessor) are paid or satisfied in full, however such obligations arose and whether such obligations presently exist or hereafter arise.

The security interest granted in the foregoing paragraph shall be governed by and subject to the terms of the Amended Lease.



Capital Corporation

By its execution of this Rider **2** and any other instruments evidencing same, Lessee shall thereby be deemed to have made the following representation and warranty to Lessor:

Lessee shall not grant to or suffer to exist any security interest in the Additional Collateral in favor of any person other than Lessor subsequent to the date of this Rider **2** . In the event any person other than Lessor hereafter acquires or possesses a lien on or other right or interest in the Additional Collateral in contravention of the preceding sentence, the enforceability of this Rider **2** by Lessee and Lessor's acceptance of the terms and conditions hereof are and shall be expressly contingent upon and subject to, at Lessee's sole cost and expense, (i) Lessee obtaining from any such person a subordination agreement which provides for the subordination of any superior lien, right, or interest to the security interest of Lessor, (ii) Lessee filing any and all instruments with any and all governmental filing authorities deemed necessary or appropriate by Lessor to evidence any such subordination agreement of record, and (iii) Lessee providing Lessor with executed copies of all such subordination agreements and certified copies of all instruments reflecting the filing of the evidence of same with all governmental filing authorities designated by Lessor.

All terms and conditions of the aforesaid Master Lease and Equipment Schedule and any and all other documents and agreements executed or delivered pursuant thereto remain in full force and effect and shall apply to this Rider **2** as if set forth herein in their entirety, except as expressly modified or amended in this Rider **2** .

Lessor:        MAN Capital Corporation

By: _____

Name: _____

Title: _____

Lessee:        **Sioux Printing, Inc.**

By: _____

Name: _Jon S. Lawin_

Title: _President_



Capital Corporation

## CERTIFICATE OF ACCEPTANCE
### (Lease)

To:     MAN Capital Corporation                         (212) 509-4549
        17 State Street                                  (212) 269-2854 (facsimile)
        New York, NY  10004
        Attention:  Contract Administrator

| | |
|---|---|
| Lessee: | Sioux Printing, Inc. |
| Master Lease Agreement Dated: | September 15, 1998 |
| Equipment Schedule Number: | 002 |
| Supplier: | MAN Roland Inc., 800 East Oak Hill Drive, Westmont, Illinois 60559 |
| Supplier Machinery Contract Date: | April 28, 1999 |
| Equipment: | As described in attached Equipment Rider |
| Equipment Location: | 500 East 52nd Street North, Sioux Falls, South Dakota 57104 |

The undersigned, a duly authorized representative of Lessee, hereby certifies to MAN Capital Corporation ("Lessor"), all capitalized terms not otherwise defined hereinafter having the meanings or designations ascribed to them above or in the Master Lease Agreement or Equipment Schedule described above, that:

1.      All of the Equipment has been delivered to and received by Lessee on or prior to the date set forth below (the "Acceptance Date").

2.      The Equipment has been fully installed, all work necessary to operate the Equipment has been completed, and the Equipment is in good working condition and is in all respects satisfactory to Lessee.

3.      Lessee has inspected the Equipment and Lessee hereby irrevocably accepts the Equipment for lease and for all other purposes under and pursuant to the Master Lease Agreement and Equipment Schedule as of the Acceptance Date.

4.      Lessor has fully and satisfactorily performed all convenants and conditions to be performed by it under the Master Lease Agreement and Equipment Schedule.

5.      No event has occurred which would allow Lessor to declare a Lessee Event of Default and all representations and warranties of Lessee made by Lessee in the Master Lease Agreement or Equipment Schedule are true as of the Acceptance Date.

6.      Lessee hereby irrevocably approves Supplier's invoice for the Equipment and authorizes Lessor to acquire ownership of and to purchase the Equipment.

Lessee:     Sioux Printing, Inc.

By:         _Ron Roberts_

Print Name: _Ron Roberts_

Date:       _8-27-99_

EXHIBIT

E

990628Sioux Accept Cert2